UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| NORMAN B. MULLINS, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil No. 10-93-ART |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| IBCS MINING, INC., KENTUCKY DIVISION, et al., | ) | **ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Two wrongs do not make a right. But in this case, two mistakes have put the parties right back where they started. Through oversight, and maybe a bit of carelessness, defendant IBCS Mining, Inc., Kentucky Division did not make scheduled Note payments to plaintiff Norman B. Mullins. But Mullins did not act quickly enough for IBCS's oversight to affect the Note. Because IBCS was able to cure its default before Mullins accelerated payment on the Note, IBCS's motion for summary judgment is granted.

**BACKGROUND**

In January 2010, IBCS Mining executed a Note in favor of Norman Mullins. R. 1 at 1. The principal on the Note was $675,000, amortized over thirty years, with a five-year balloon at four-and-a-quarter percent. *Id*. Monthly payments on the Note were about $3,300 beginning in March 2010. *Id*. As security for the Note, IBCS also executed a subordinate Mortgage covering real property. *Id*. at 1–2. The relationship of the parties is complicated, as reflected in IBCS's thirteen-page summary of the

deal's history. R. 16 at 2–14. For background purposes, however, it is sufficient to state that the parties intended to invest in a processing facility on the mortgaged property that would allow for the sale of extracted coal. R. 16 at 1–2.

IBCS paid on time for the months of March and April 2010. R. 36-1 at 3. But payments for May and June 2010 were late. *Id*. at 10. The CEO of IBCS, Ed Scarborough, took a vacation in June 2010 and did not make payments for either May or June 2010 before leaving, resulting in accrued principal, interest, and late charges. *Id*. at 3. Mullins finally received principal and interest payments for both months in an envelope postmarked July 14, 2010. R. 13-1 at 1; R. 29-1.

Two days later, Mullins's counsel sent IBCS a default letter declaring all sums under the Note immediately due and payable pursuant to the Note's acceleration clause. R. 13-4. Mullins also returned IBCS's May and June payments. R. 13-1 at 1. On July 28, 2010, Mullins filed a foreclosure action on the property securing the Note. R. 1. The next day, IBCS tendered payment for the May and June late charges. R. 37-1 at 2. To date, IBCS has made all monthly payments on time, but Mullins has rejected each payment. R. 36-1 at 5.

Each side previously filed a motion for summary judgment, R.13; R. 21, but the Court denied both as premature due to the lack of discovery, R. 19; R. 31. After conducting discovery, *see* R. 37-2, on June 16, 2011, IBCS renewed its motion for summary judgment. R. 36. That motion is now before the Court.

**DISCUSSION**

This round of summary judgment presents a narrow issue: did IBCS cure its default before Mullins invoked the acceleration clause? It did. As a result, Mullins cannot maintain this foreclosure action, and summary judgment must be granted in favor of IBCS.

The terms of the Note are straightforward. Monthly payments are due on the first of the month. R. 1-1 at 2. If a payment is more than thirty days late, IBCS incurs a five-percent charge on each late payment. *Id.* If a payment is more than sixty days late, then Mullins has the option to accelerate the entire unpaid principal and accrued interest. *Id.* Mullins does not have to notify IBCS when it elects to accelerate, but it must send notice either contemporaneous with or subsequent to exercising the acceleration option. *Id.*

Likewise, the terms of the Mortgage are straightforward. IBCS promises to pay principal and interest due under the Note. R. 1-2 at 1. If IBCS defaults on the Note, then Mullins has the option to accelerate the unpaid balance under the Note. If IBCS cannot pay the accelerated amount, Mullins can foreclose on the mortgaged property to recover the amount owed. *Id.* at 5.

Based on the above terms, the only payment at issue is May 2010. Payment was due on May 1, giving IBCS until June 30, 2010, to make the scheduled payment before Mullins could accelerate the unpaid principal and accrued interest. The June payment was due June 1, meaning Mullins could not accelerate based on that late payment until July 31, 2010. But this foreclosure action was filed on July 28, 2010—

three days too early to base it on the June payment. Thus, acceleration and foreclosure cannot be based on the late June payment. Only the late May payment could justify acceleration and foreclosure.

**I. Summary Judgment**

A party is entitled to summary judgment only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In a contract action, summary judgment may be appropriate where the terms of the contract are unambiguous and the facts of the case are not disputed. *Cook v. Little Caesar Enters., Inc.*, 210 F.3d 653, 655–56 (6th Cir. 2000). Here, the relevant, unambiguous provisions of the Note can be easily applied to the facts in evidence to support summary judgment.

**II. The Note**

It is clear that IBCS was more than sixty days late with its May payment and that Mullins could therefore accelerate the Note. However, Kentucky law permits debtors to cure overdue installment payments as long as the Note has not been accelerated. Ky. Rev. Stat. 355.3-304(2)(a). Thus, the key question is whether or not IBCS cured its late payment before Mullins invoked the acceleration clause. The

answer requires a two-part analysis: (1) when did Mullins invoke the acceleration clause, and (2) when did IBCS attempt to cure its overdue payment.

## A. The Acceleration Clause

Determining when Mullins invoked the acceleration clause first requires recognizing that the clause is optional and not automatic. Automatic acceleration is triggered by an event described in the debt instrument. *See Smith v. Bethlehem Sand & Gravel Co.*, 342 S.W.3d 288, 290 (Ky. App. 2011) (observing that a promissory note contained a default provision to accelerate the note "upon any event of default, including the filing of a bankruptcy petition"). But here, the Note states that after 60 days the "entire unpaid balance" and "all interest accrued . . . shall at the *option of the Holder*, without notice, become due and payable." R. 1-1 at 2 (emphasis added). The optional acceleration clause gives Mullins the right, but not the obligation, to accelerate payments on the Note. *See Catron v. Citizens Union Bank*, 229 S.W.3d 54, 56, 58 (Ky. App. 2006) (holding that the creditor validly accelerated payment where the terms of the note allowed acceleration upon default "at the Lender's option").

So how and when did Mullins exercise this option? Mullins cannot simply allege that he one day decided to do so. Rather, he must provide evidence that he affirmatively invoked the acceleration clause. *See Farmers' Bank & Trust Co. v. Dent*, 267 S.W. 202, 204–05 (Ky. 1924) (finding that an optional acceleration clause had no effect until the creditor filed a foreclosure suit); *see also, e.g.*, *Padilla v. Ghuman*, 183 P.3d 653, 659 (Colo. App. 2007) ("[T]he effect of inaction or silence on the option to accelerate payments under a note upon default is well settled. Where an

acceleration provision is exercisable at the option of the obligee, the obligee must perform some clear, unequivocal affirmative act evidencing the obligee's intention to take advantage of the acceleration provision.") (citations omitted); *Hardin v. Kirkland Enters., Inc.*, 939 So. 2d 40, 45 (Ala. Civ. App. 2006) ("An optional acceleration provision is not self-executing; it generally requires the holder of the option to take some affirmative action evidencing his intention to exercise the option within a reasonable time after default."). Here, Mullins has presented evidence of only two acts invoking acceleration. One was the July 28 foreclosure suit. *See Dent*, 267 S.W. at 205. The other was the July 16 default letter demanding accelerated payment. For this analysis, the Court will give Mullins the benefit of the earlier date and consider July 16 the day Mullins invoked the acceleration clause.

**B. Cure**

On July 14, 2010, IBCS mailed a check to Mullins for $3,320.59. *See* R. 29-1; R. 30-2. Mullins does not dispute that this date marks when IBCS tendered payment for the principal and interest due in May. R. 37-1 at 2. Instead, Mullins asserts that by not paying the late charge, the check did not cure IBCS's overdue payment. Indeed, it was not until July 29, 2010, that IBCS tendered the late charges. But Mullins is wrong. The parties disagree about whether they intended to include the late charge in the acceleration clause, but this disagreement does not create a factual issue precluding summary judgment. When there is no ambiguity in a contract, a court can determine intent by looking at the document itself. *3D Enters. Contracting Corp. v. Louisville and Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky.

2005).  Here, the Note unambiguously limits Mullins's ability to accelerate payment upon "default in the payment of the *principal of or the interest on* this Note."  R. 1-1 at 2 (emphasis added).  The late charge clause refers to monthly payments more than thirty days late, but this is separate from the acceleration clause.  The acceleration clause refers to payments that are sixty days late and only mentions default as to principal and interest.  By these terms, the Note did not require IBCS to tender the late charges in order to cure default.  By tendering payment for May's principal and interest charges on July 14, 2010, IBCS cured its default before Mullins invoked the acceleration clause.  Therefore, Mullins cannot maintain this foreclosure action.

## CONCLUSION

Accordingly, it is **ORDERED** that IBCS's motion for summary judgment, R. 36, is **GRANTED**.  A separate Judgment will issue.

This the 6th day of October, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge